| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>DERICK LOUANGAMATH,<br><br>Defendant. | No. 2:20-cr-0034 KJM DB<br><br><br>ORDER |

On May 7, 2021, this matter came before the undersigned for hearing of defendant's motion to compel. (ECF No. 54.) Attorney Aaron Pennekamp appeared on behalf of plaintiff United States of America. Attorney Mia Crager appeared on behalf of defendant Derick Louangamath. Oral argument was heard and defendant's motion was taken under submission.

As the parties are aware of the factual background of this action, the undersigned provides just a brief synopsis. On November 23, 2019, defendant was stopped by Officers Michael Phelan and Chase Cunningham of the North Sacramento Gang Enforcement Team due to defendant allegedly driving a vehicle with its high beams on. A subsequent search found firearms, and federal prosecutors have charged defendant with being a felon in possession of a firearm in violation of 28 U.S.C. § 992(g). On April 19, 2021, the assigned District Judge set an evidentiary hearing in this action, which is now set for June 1, 2021. (ECF Nos. 49, 60.)

////
////

1

On April 23, 2021, defendant filed the pending motion to compel. Defendant's motion seeks to compel production of six individual requests for production of documents. (ECF No. 54 at 8.) Specifically,

1. All text messages sent and received by Officers Chase Cunningham and Michael Phelan on the evening of November 23, 2019, or anytime thereafter, that relate to or discuss Mr. Louangamath, the stop on his car, the search of his phone or house, or any reference to Mr. Louangamath being a suspected gang member. This request includes but is not limited to the text messages sent by Officer Cunningham at Bates 185, minute 36:45, one of which appears to read, "We just added another to the board."

2. All materials – including notes, handouts, slideshow presentations, videos, audio recordings, and any other materials – produced for or from any trainings attended by Officers Chase Cunningham and/or Michael Phelan relating to the Fourth and Fifth Amendments or other legal requirements related to executing a stop and/or investigating criminal or gang activity.

3. All materials – including notes, handouts, slideshow presentations, videos, audio recordings, and any other materials – produced for or from any trainings attended by Officers Chase Cunningham and/or Michael Phelan relating to how to identify gang members and/or the evidence needed to validate gang members.

4. Any and all lists of gangs active in the Sacramento area.

5. Any and all lists, notes, or other materials describing the known characteristics of Laotian or other Asian gangs active in the Sacramento area.

6. All written, electronic, or otherwise recorded bulletins or briefings, including emails, notices, or "Be on the Lookout" ("BOLO") notifications received by Officers Phelan and/or Cunningham which relate to Asian or Laotian gangs or gang activity in the two weeks leading up to Mr. Louangamath's arrest in this case. This request includes but is not limited to any bulletins, briefings, or BOLO notifications arising from the mass shooting in Fresno on November 17, 2019.

(Id.) The parties' dispute as to the first request is moot, however, because the government will "produce the requested text messages . . . prior to" the evidentiary hearing in this action. (ECF No. 55 at 12; ECF No. 60.)

As to the remaining items of dispute, the undersigned has reviewed the parties' briefing and finds that defendant's motion to compel should be granted for the reasons set forth in defendant's briefing and at the May 7, 2021 hearing. In this regard, much of the government's argument in opposition relies on the assertion that defendant is looking for evidence related to "alternative reasons" for the vehicle the stop. (ECF No. 55 at 16, 18, 21.) Defendant however is not asserting that the officers had alternative reasons for the traffic stop.

////

Instead, the "defense theory is that the officers' only reason for pulling Mr. Louangamath over was to investigate his gang status." (ECF No. 57 at 4.) Thus, the defendant does not believe the officers had alternative reasons. Defendant believes the officers had only one reason—gang status—and that the reason given by the officers—driving with high beams—was a pretext. That is consistent with the analysis of the assigned District Judge at the April 19, 2021 hearing, who stated that the evidentiary hearing was to analyze the "officers' credibility" as to whether "the high beam narrative is a pretext[.]"

At the May 7, 2021 hearing counsel for the government argued that the hearing's credibility analysis would be limited to information such as the officers' vantage point. The assigned District Judge certainly could limit the hearing as such. But based just on the record before the undersigned, it is not apparent that the hearing has been so limited. And in the absence of such a limitation, the undersigned would not define "credibility" that narrowly. As such, the undersigned finds the discovery requested by defendant to be relevant and material to a determination of the officers' credibility, as articulated by defendant. (ECF No. 54 at 10.)

In this regard, pursuant to Rule 16 of the Federal Rules of Criminal Procedure a defendant may inspect documents "material to the preparation of the defendant's defense[.]" Fed. R. Crim. P. 16(a)(1)(C). "This materiality standard normally 'is not a heavy burden,' rather, evidence is material as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" U.S. v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (quoting U.S. v. Caicedo-Llanos, 960 F.2d 158, 164 (D.C. Cir. 1992)). '[E]vidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." U.S. v. Bagley, 473 U.S. 667, 682 (1985).

Here, for example, defendant seeks legal requirements related to executing a stop, lists of gangs active in the Sacramento area, lists of known characteristics of Asian gangs active in the Sacramento area. (ECF No. 54 at 8.) How the officers' testimony at the evidentiary hearing aligns or conflicts with the information found in the information sought by the defendant would either support or call into question the officers' credibility, thus effecting the result of the

evidentiary hearing. Defendant also seeks training related to the Fourth and Fifth Amendments requirements related to executing a stop and/or investigating criminal gang activity. Again, how the nature of this evidence compares with the officers' testimony at the evidentiary hearing would bear on their credibility.

Likewise, the undersigned finds the government's reading of Brady overly narrow. "The government, where doubt exists as to the usefulness of evidence, should resolve such doubts in favor of full disclosure[.]" U.S. v. Van Brandy, 726 F.2d 548, 552 (9th Cir. 1984). The term "Brady violation" is used when after conviction a court on review finds that exculpatory evidence was withheld. See Strickler v. Greene, 527 U.S. 263, 281 (1999) ("Thus the term 'Brady violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called 'Brady material'—although, strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

But disclosure and discovery are not limited to only those things that would be Brady violations. See United States v. Bass, Case No. 2:16-cr-0056 GMN GWF, 2017 WL 11456614, at *2 (D. Nev. Mar. 8, 2017) ("The Government has the duty to disclose evidence favorable to the accused even if it does not meet the constitutional standard of materiality for reversal of a conviction under Brady."). "Simply because 'material' failures to disclose exculpatory evidence violate due process does not mean only 'material' disclosures are required." U.S. v. Acosta, 357 F.Supp.2d 1228, 1233 (D. Nev. 2005).

Moreover, Brady material is not only evidence establishing innocence, it is also evidence that would undermine the verdict. See Kyles v. Whitley, 514 U.S. 419, 435 (1995) ("One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict[.]"). "Evidence that weakens the credibility of a prosecution witness has long been considered Brady material. Thus, evidence that would show bias, motive to lie or exaggerate, or dishonesty of the witness is within the scope of Brady." U.S. v. Sudikoff, 36 F.Supp.2d 1196, 1197-98 (C.D. Cal. 1999).

And evidence calling into question the nature of the investigation has also been held to be Brady material.  See, e.g., Bowen v. Maynard, 799 F.2d 593, 613 (10th Cir. 1986) ("The withheld evidence also raises serious questions about the manner, quality, and thoroughness of the investigation that led to Bowen's arrest and trial.  A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible Brady violation."); Lindsey v. King, 769 F.2d 1034, 1042 (5th Cir. 1985) ("the evidence withheld by the prosecutor in today's case carried within it the potential both for the destruction of Alexander's identification of Lindsey and the discrediting, in some degree, of the police methods employed in assembling the case against him[.]").  Such information must also be disclosed "'at a time when [the] disclosure would be of value to the accused.'"  U.S. v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (quoting United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985)).

At the May 7, 2021 hearing, counsel for the government argued that this action was no different than the typical case in which the defendant alleges that the arresting officer was lying and directed the undersigned to Pennsylvania v. Ritchie, 480 U.S. 39 (1987), in which the court stated that "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files." Id. at 59.  The circumstances here, however, are distinguishable as to both arguments.

The defendant here is not simply alleging to the court that the officers lied.  Instead, the assigned District Judge has ordered an evidentiary hearing as to the issue of the officers' credibility.  And the defendant is not seeking unsupervised authority to search through the government's files.  Instead, defendant is seeking specific and defined discovery relevant and material to prepare for a pending evidentiary hearing.

////

////

////

////

////

Accordingly, upon consideration of the arguments on file and those made at the hearing, and for the reasons set forth on the record at that hearing and above, IT IS HEREBY ORDERED that:

1. Defendant's April 23, 2021 motion to compel (ECF No. 54) is granted; and
2. The government shall produce responsive documents on or before May 25, 2021

Dated: May 10, 2021

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/louangamath0034.oah.05072021

6